UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CR651DJS(MLM) |
| ) | |
| RODERICK McARTHUR, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Suppress Physical Evidence. [Doc. 17][1] The government filed a written Response. [Doc. 18] On 1/16/08 an Evidentiary Hearing was held at which the government presented the testimony of Detective Juan Francis Gomez. Defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Detective Gomez of the St. Louis County Police Department testified he has been a police officer for approximately eleven years. His duties include investigation of the possession, receipt or transportation of child pornography. He has investigated numerous

---

[1] Defendant moved to suppress evidence seized from his residence pursuant to a state Search Warrant and the subsequent search of his computer after he signed a Consent to Search form and after a second state Search Warrant was issued for the search of the computer. Defendant was questioned on 4/1/06 by the Des Peres Police. He has not moved to suppress the statements he made at that time. Defendant was also questioned on 4/4/06, after the execution of the first Search Warrant. He has not moved to suppress the statements he made at that time.

such cases and has received training at the National Center for Missing and Exploited Children and has taken some forensic software classes. He is familiar with the characteristics of those who collect or trade child pornography: they tend to keep their collections for an extended period of time and to store them in safe places like their residences and, more recently, on their computers.

On 4/6/06 Det. Gomez applied for a Search Warrant for defendant's residence. He presented an Application and an Affidavit in Support (Gov.Ex.1) to the Honorable Brenda Loftin of the St. Louis County Circuit Court. The Affidavit describes the property to be searched with particularity and states Det. Gomez' credentials. The Affidavit continues that on 4/4/06 Det. Gomez was contacted by PO Trent Koppel of the City of Des Peres Police Department who advised him that on 4/1/06 at approximately 2:25 p.m. she arrested a subject identified as Roderick L. McArthur having a date of birth of 1/20/31 for the crime of Public Indecency.

Det. Gomez was able to identify the subject as Roderick L. McArthur, white/male, 75 years old having a date of birth of 1/20/31, SSN xxx-xx-5295 and a height of 6'0" and a weight of 195 pounds. The subject had a home address of 1123 Jade Wind, Ballwin, Missouri 63011.

PO Koppel told Det. Gomez that on Saturday, 4/1/06 at approximately 2:22 p.m. she was on duty at the West County Mall and was notified by a security guard that he had observed a white male masturbating inside a maroon Buick LeSabre, Missouri License 217-DRP traveling northbound near the Nordstrom store. PO Koppel responded to the location and observed the vehicle behind several vehicles in line for a parking spot in the center aisle. She then activated her emergency lights and siren in order to make the vehicle stop. She stated that the driver, later properly identified as Roderick L. McArthur by way of his

Missouri Driver's License, tried to drive around the vehicles in front of him but was unable to do so because of the traffic.

PO Koppel approached the above-described vehicle and contacted the defendant from the driver's side and ordered him to turn off the engine and exit the vehicle. She stated as she was doing this she observed that defendant's penis was exposed just under his left hand while his right hand was on the steering wheel. She also stated that his penis was exposed through a hole in his pants underneath the front zipper.

PO Koppel stated that defendant exited the vehicle and provided his driver's license. She then placed defendant under arrest for the Des Peres charge of Public Indecency and conveyed him to the Des Peres Police Department for booking.

She said that after she read defendant his <u>Miranda</u> rights he said that he understood and waived his rights agreeing to make a statement. PO Koppel stated in her report and confirmed to Det. Gomez that defendant made the following statement: He said that since childhood he has always had an overactive libido and sometimes cannot control his urges. He told PO Koppel that he had met someone (an unidentified male) online and they agreed to meet at the West County Mall under the Dove sign. Defendant stated that when the person did not arrive he decided to drive around the mall parking lot. He stated that at one point he became aroused and began to masturbate. He said he was very sorry for his actions. He then gave a written statement. In the statement defendant wrote that he was to meet someone at the West County Mall "at the Dove sign." Defendant apologized in his written statement for his "very inappropriate behavior."

PO Koppel stated that upon inventorying defendant's property she discovered a laminated photograph of nude male child with an adult Caucasian's erect penis. The

photograph depicted the young boy looking at and touching the penis with his left hand. She seized the photograph and packaged it as evidence.

On 4/4/06 Detective Sergeant Adam Kavanaugh responded to the Des Peres Police Department and the photograph was released to him. Det. Sgt. Kavanaugh then conveyed the photograph to St. Louis County Police Department Criminal Investigations Unit. Det. Sgt. Kavanaugh asked forensic analyst, Det. John Schmidt of the St. Louis County Police Department, Computer Fraud Unit, to view the photograph. Det. Schmidt stated that the photograph was modified using computer software.

A utilities check on 1123 Jade Wind showed the registered name listed as Roderick McArthur with a Social Security Number as listed above. A D.O.R. check on a blue vehicle parked in front of 1123 Jade Wind bearing Missouri plates 279-AEY showed that they were issued to a 1994 Buick 4-door registered to Roderick McArthur at that address.

Det. Gomez stated in his Affidavit that defendant has been arrest for multiple sex offenses in St. Louis County in the past twenty years but has failed to register as a sex offender as required by law.[2]

Based on the matters contained the Application and Affidavit in Support, Judge Loftin found probable cause to search the residence at 1123 Jade Wind and signed the Search Warrant on 4/4/06 at 6:30 p.m. (Gov.Ex.1)

The warrant was executed later on 4/4/06.[3] The return and inventory lists the items seized. (Gov.Ex.1) Included were an EMachines computer, a pocket PC, a Cannon digital

---

[2] Det. Gomez testified at the Evidentiary Hearing that defendant had a 1986 conviction for sodomy (involving a minor) and a 2004 conviction for sexual misconduct (not involving a minor).

[3] There is no challenge to the manner of the execution of the Search Warrant.

- 4 -

camera, a Fuji digital camera, some floppy disks, a CD/DVD, a laptop computer and assorted papers. Most of these items, with the exception of the EMachines computer were later returned to defendant.

After the Warrant was executed, Det. Gomez arrested defendant for failure to register as a sex offender and transported him to the County Police Department. He interviewed defendant at that time. The entire interview was recorded and pertinent parts were played at the Evidentiary Hearing. The government introduced the entire tape of the interview as Gov.Ex.5. Det. Gomez testified and the tape confirms that he advised defendant of his <u>Miranda</u> rights by reading each right from the St. Louis County Police Department Warning and Waiver form. After each right, defendant was asked if he understood, and if so to initial by that right. Defendant did so. The form is Gov.Ex.2 and is incorporated by reference as if fully set out herein.

Det. Gomez testified defendant did not appear to be under the influence of drugs or alcohol; he appeared to understand Det. Gomez' questions and to understand what was going on; no threats or promises were made to induce him to speak. Det. Gomez asked defendant about the laminated photograph found in his possession when he was arrested in Des Peres. Defendant said his nephew gave it to him 15-20 years ago and he put it in his wallet and forgot about it. Det. Gomez asked for permission to search defendant's EMachines computer, the digital cameras, the pocket PC and the laptop. After repeatedly and emphatically denying there was child pornography on any of this equipment,[4]

---

[4] The tape reflects defendant said there was no child pornography on his computer. "Absolutely not!" He said children did not interest him and he had never visited a child pornography site. He said he is the only one who uses the EMachines computer. He said he does not know how to go to chat rooms and he only uses the computer for business. He said Det. Gomez was "barking up the wrong tree" if he was looking for child pornography or pornography. Defendant assured Det. Gomez he would not find child

defendant signed a Consent to Search for digital data devices. This document is Gov.Ex.3 and is incorporated by reference as if fully set out herein. Again, the tape confirms that no threats or promises were made to induce defendant to consent.

On 4/7/06 Det. Gomez took the equipment to RCCEEG[5] for a forensic examination to be conducted by Det. Leonard Stimmel, a Forensic Computer Analyst. During a brief exam of the EMachines Computer, Detective Stimmel observed several images of what appeared to be children involved in sex acts or displaying their genitals in a sexual manner.

Even though defendant had already signed the Consent to Search the Emachines Computer, out of an abundance of caution, Det. Gomez presented the second Application and Affidavit in Support of a Search Warrant of the EMachines Computer. (Gov.Ex.4) The Affidavit contains all of the information contained in the first Affidavit and adds the results of the seizure of the EMachines computer during the execution of the first Search Warrant and the results of Detective Stimmel's brief search. On 4/26/06 at 12:15 p.m. the Honorable Dale Hood of the St. Louis County Circuit Court found that there was probable cause and signed the Search Warrant for the search of defendant's EMachines computer. (Gov.Ex.4)

## CONCLUSIONS OF LAW

1.  **STATEMENTS**

As noted in footnote 1, defendant has not moved to suppress his statements. It can readily be seen from the Findings of Fact above that there are no grounds for suppression. At the Des Peres Police Station defendant was fully advised of his <u>Miranda</u> rights before

---

pornography on the computer and added "I hope you go through it!"

[5] Regional Computer Crime Education and Enforcement Group.

making any statement. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444. This is not one of the rare cases described in Berkemer. His statements in Des Peres should not be suppressed.

Defendant also made statements to Det. Gomez after the execution of the first Search Warrant. The same legal analysis as stated above applies. The tape, Gov.Ex.5, shows defendant was fully advised of his Miranda rights, signed a Warning and Waiver form and

spoke to Det. Gomez. The tape confirms that no threats or promises were made to induce him to speak. His statements were voluntary and should not be suppressed.

2. SEARCH OF DEFENDANT'S RESIDENCE

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." <u>Gates</u>, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. <u>Gates</u>, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." <u>Gates</u>, 462 U.S. at 238-39, <u>quoting</u> <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. <u>Gates</u>, 462 U.S. at 236. The affidavit presented in the instant case for the search of defendant's residence clearly contains the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at the address indicated.

The facts set out above show that there was a substantial basis for concluding that probable cause existed. Three days before the Affidavit was executed defendant was observed masturbating at a local mall. He told the officer he had met an unidentified male online and had arranged to meet him at the mall. When the male did not appear defendant began to masturbate. He stated that sometimes he was unable to control his sexual urges. In his wallet he had a photograph of a young boy looking at and touching an adult penis. A forensic expert indicated that the photograph had been modified using computer software. Defendant had prior arrests for sex offenses and had failed to register. Records confirm that he lived at 1123 Jade Wind in Ballwin, the intended location of the Search Warrant. It is well known and a fact to which Det. Gomez testified, that persons interested in child pornography maintain their collections for long periods of time in secure locations, typically their residence. See United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005). Det. Gomez knew that defendant had access to a computer because he had used it to contact the unidentified individual to meet at the mall. Clearly, under the totality of these circumstances there was probable cause to believe that the evidence of child pornography would be at his residence. The items seized should not be suppressed.

3.   GOOD FAITH EXCEPTION OF LEON

The government argues that the good faith exception as set out in United States v. Leon, 468 U.S. 897, 923 (1984) could apply in this case. The court finds that the Affidavit contained probable cause. In the alternative, however, in case the district court should find there was insufficient probable cause to connect child pornography to defendant's residence, the court will set out the Leon analysis. "Nevertheless, reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause" and thus the Supreme Court has concluded that the issuing judge's determination

- 9 -

be given "great deference."[6] United States v. Leon, 468 U.S. 897, 914 (1984), citing Spinelli v. United States, 393 U.S. 410, 419 (1969).

"Even if the warrant application was supported by more than a `bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." Leon, 468 U.S. at 915, citing Gates, 462 U.S. at 238-39.

In the present case, even if the district court should determine that there were insufficient facts set out in the affidavit and that the issuing judge relied on the "bare conclusions of others," Gates, 462 U.S. at 239, or there was insufficient connection between child pornography and defendant's residence, the evidence seized pursuant to the search of the residence should not be suppressed.

The exclusionary rule is not designed to punish the errors of judges and magistrates. Leon, 468 U.S. at 916. The Supreme Court has clearly recognized that the prosecution should not be barred from using in its case-in-chief evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. Leon, 468 U.S. at 900. In the present case Det. Gomez was neither dishonest or reckless in preparing the Affidavit. There

---

[6] In assessing the deference to be accorded a magistrate's finding of probable cause, the Leon Court adopted a four-part test: first, there may be an inquiry into the knowing or reckless falsity of the affidavit on which the determination was based. Franks v. Delaware, 438 U.S. 154 (1978); second, there must be insistence that the magistrate perform his "neutral and detached" function and not serve as a rubber stamp for the police. Aguilar v. Texas, 378 U.S. 108, 111 (1964); third, the warrant must be examined for facial deficiency, that is whether it is lacking in detail as to the place to be searched or the effects to be found; and fourth, the magistrate must have a substantial basis for the determination of the existence of probable cause. Gates, 462 U.S. at 239.

were sufficient facts in the Affidavit that the officers could have executed it with objective good faith reliance on the probable cause determination of Judge Loftin. Defendant does not allege Det. Gomez knowingly or recklessly gave false information, nor that the judge abandoned her neutral and detached role. Here, the officers executing the warrant "acted in objectively reasonable reliance on a warrant issued by a neutral magistrate." United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995), cert. denied, 116 S.Ct. 1032 (1996), quoting United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (citing United States v. Leon, 468 U.S. 897, 922 (1984).

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926; United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (even if facts in affidavit did not give rise to probable cause, officers acted in good faith based on issuance of warrant and specific information contained therein) cert. denied, 516 U.S. 1139 (1996); United States v. Smith, 63 F.3d 766, 769 (8th Cir. 1995) (search warrant not facially invalid and contained sufficient facts that officers could have executed it with objective good faith reliance on probable cause determination of magistrate judge), cert. denied, 516 U.S. 1063 (1996); United States v. Skorniak, 59 F.3d 750, 754-55 (8th Cir. 1995) (officers' reliance on magistrate's probable cause determination was objectively reasonable and evidence seized came within the good-faith exception to the exclusionary rule regardless of whether there was probable cause, given the affidavit's detailed information about the extensive investigation and defendant's failure to contend the officers did not act in reasonable good faith manner) 516 U.S. 980 (1995); United States v. Frangenberg, 15 F.3d 100 (8th Cir.), cert. denied, 513 U.S. 856 (1994) (although whether

the search warrant was supported by probable cause was open to serious debate, court took into account the knowledge that an officer in the searching officer's position would have possessed in evaluating objective reasonableness of officer's reliance). The items seized from defendant's residence should not be suppressed.

4. **DEFENDANT'S ARREST**

After the execution of the Search Warrant on 4/4/06, Det. Gomez arrested defendant for failure to register as a sex offender. Defendant contends his arrest was invalid because defendant was not required to register as a sex offender. The government's Response states the correct application of the law and the proper analysis:

> On April 4, 2006, the date of defendant's arrest, the Missouri Sex Offender Registration requirements applied to "any person who, since July 1, 1979, has been or is hereafter convicted of, been found guilty of, or pled guilty or nolo contendere to committing, or attempting to commit a felony offense of chapter 566. . .or any offenses of chapter 566, R.S.Mo. where the victim is a minor. . ." Section 589.400.1(1) Mo.Rev.Stat. 2005 "Any person to whom sections 489.400 to 589.425 apply if not currently registered in the county of residence shall register with the chief law enforcement official of such county or city not within a county within ten days of August 28, 2003." Section 589.400.2 Mo.Rev.Stat. 2005. Thus, as of 4/4/06 defendant was required to register as a sex offender.
>
> On June 30, 2006, the Missouri Supreme Court issued its opinion in *Doe v. Phillips*, 194 S.W.3d 833, Mo. (2006). The court found that the registration requirement for sex offenders who were convicted before the effective date of the Sex Offender Registration Act (January 1, 1995) was not a violation of due process, equal protection [provisions] and ex post facto [prohibitions]. Id. at 838. However, the court found that such a requirement was a violation of the Missouri's constitutional prohibition of laws retrospective in operation. *Id.* Thus, as of June 30, 2006 defendant was not required to register as a sex offender because his conviction was from 1986 - - prior to the enactment of the Sex Offender Registration Act. His arrest on 4/4/06 was supported by the law at the time but that portion of the statute was *later* voided by the Missouri Supreme Court.

Gov.'s Response (Doc. 18) at 8-9 (emphasis in original). Defendant's arrest was lawful.

5. **SEARCH OF DEFENDANT'S COMPUTER**

After the execution of the first Search Warrant and defendant's arrest, he consented to a search, *inter alia*, of his EMachines computer.

A search based on the consent of an individual may be undertaken by government actors without a warrant or probable cause and any evidence discovered during the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent must be freely and voluntarily given. Id. In determining whether consent is freely and voluntarily given, the court must examine the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 547 (1980); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); United States v. Lee, 886 F.2d 998, 1000 (8th Cir. 1989), cert. denied, 495 U.S. 906 (1990).

The inquiry must then turn to whether the consent was voluntary. The burden is on the government to show that the consent was voluntary under the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). There are numerous factors a court should consider in determining whether consent was freely and voluntarily given. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). In Chaidez, the Eighth Circuit noted that:

> courts should ask whether the person who consented: (1) was detained and questioned for a long or short time, . . . (2) was threatened, physically intimidated, or punished by the police, . . . (3) relied on promises or misrepresentations made by the police, . . . (4) was in custody or under arrest when the consent was given, . . . (5) was in a public or secluded place, . . . or (6) either objected to the search or stood by silently while the search occurred.

Id. at 381 (citations omitted). In this case defendant was questioned for a mere 30 minutes. The tape confirms that he was not threatened physically intimidated or punished by the police in any manner. The tape further confirms that no promises or misrepresentations

were made by Det. Gomez. Although defendant was in custody when the consent was given, he was in an interview room in the St. Louis County Police Department and he clearly voluntarily consented.

In <u>United States v. Hathcock</u>, 103 F.3d 715, 719 (8th Cir. 1997), the Eighth Circuit reaffirmed the <u>Chaidez</u> factors and stated:

> We have set out some individual characteristics that aid in the determination of whether consent is voluntary: (1) age; (2) general intelligence and education; (3) whether an individual was under the influence of drugs, alcohol or otherwise; (4) whether an individual was informed of his or her <u>Miranda</u> rights prior to the consent; and (5) whether an individual had experienced prior arrests so that he or she was aware of the protections that the legal system affords to suspected criminals.

Here, defendant was a 75 year old man employed as an audio consultant. He appeared to be at least of average intelligence. Det. Gomez testified and the tape confirms that he did not appear under the influence of drugs or alcohol. He had been advised of his <u>Miranda</u> rights. He had prior arrests and convictions and therefore was aware of his rights. Based on all these circumstances it is clear that defendant's consent was voluntary.

Pursuant to defendant's consent, Det. Stimmel did a brief examination of defendant's EMachines computer and observed several images of child pornography. Based on the information already available and out of an abundance of caution, Det. Gomez applied for a Search Warrant for defendant's EMachines computer. There is no question that this Search Warrant is supported by probable cause. The evidence located should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Physical Evidence be **DENIED.** [Doc. 17]

**The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).**

                                              /s/Mary Ann L. Medler
                                              **MARY ANN L. MEDLER**
                                              **UNITED STATES MAGISTRATE JUDGE**

**Dated this  25th   day of January, 2008.**